

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

DEC 15 2010

BY_____ DEPUTY
J.T. NOBLIN, CLERK

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

DAWN MELISSA DAIGRE     *
      PLAINTIFF     *
     *    CIVIL DOCKET NO.: 1:10CV500lG RHW
     *
V.     *
     *
CITY OF WAVELAND, MISSISSIPPI,     *
A MUNICIPAL CORPORATION,     *
CHIEF JAMES A. VARNELL,     *    JUDGE: _____
OFFICER HENRY BOUGANIM,     *
SERGEANT CLAY NECAISE,     *
OFFICER CHRISTOPHER ALLEN,     *
AND OFFICER JOSHUA POYADOU     *
INDIVIDUALLY AND IN THEIR     *
OFFICIAL CAPACITIES AS POLICE     *
OFFICERS WITH THE CITY OF     *    MAGISTRATE: _____
WAVELAND, MISSISSIPPI     *
      DEFENDANTS     *
     *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## C O M P L A I N T

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Mississippi, against the **City of Waveland, Mississippi**, a Municipal Corporation, **Chief James A. Varnell**, **Officer Henry Bouganim**, **Sergeant Clay Necaise**, **Officer Christopher Allen**, and **Officer Joshua Poyadou**, Individually and in Their Official Capacities as Police Officers with the City of Waveland.

2. Defendants Sergeant Clay Necaise and Officer Henry Bouganim committed an assault and battery upon Plaintiff Dawn Melissa Daigre on or about February 6, 2010, when they, *inter alia*, slammed Plaintiff's head into a wall, breaking her nose.

3. Defendant Officer Joshua Poyadou committed an assault and battery upon the body of Plaintiff Dawn Melissa Daigre on or about February 6, 2010, when he deployed a TASER device

- 1 -

upon the Plaintiff who was then four (4) months pregnant, applying fifty thousand (50,000) volts of electricity to a law abiding citizen legally present in her own home.

## JURISDICTION

4. The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through Three (3), in their entirety, as if fully copied *in extenso* herein.

5. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343, and 1367, and upon the pendent jurisdiction of this Court to entertain claims arising under state law.

## PARTIES

6. The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through Five (5), in their entirety, as if fully copied *in extenso* herein.

7. Plaintiff, Dawn Melissa Daigre, was at all times relevant to this Complaint a legal citizen of the United States of America and a competent adult of the full age of majority and consent, domiciled, living, and residing in the County of Hancock, State of Mississippi.

8. Defendant, City of Waveland, Mississippi, a Municipal Corporation, was and is at all times relevant to this Complaint a political subdivision of the State of Mississippi, which may receive lawful service of process by serving a copy of the Complaint and Summons upon either the Mayor, David Garcia, or the Municipal City Clerk, Maureen Bordelon at 407 Highway 90, Waveland, Hancock County, Mississippi 39576.

9. Defendant, Chief James A. Varnell, was at all times relevant to this Complaint the duly appointed and acting Chief of the police department of the City of Waveland, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Mississippi and/or the City of Waveland.

10.    Defendant, Officer Henry Bouganim, was at all times relevant to this Complaint a

duly appointed and acting officer of the police department of the City of Waveland, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Mississippi and/or the City of Waveland.

11.     Defendant, Sergeant Clay Necaise, was at all times relevant to this Complaint a duly appointed and acting officer of the police department of the City of Waveland, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Mississippi and/or the City of Waveland.

12.     Defendant, Officer Christopher Allen, was at all times relevant to this Complaint a duly appointed and acting officer of the police department of the City of Waveland, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Mississippi and/or the City of Waveland.

13.     Defendant, Officer Joshua Poyadou, was at all times relevant to this Complaint a duly appointed and acting officer of the police department of the City of Waveland, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Mississippi and/or the City of Waveland.

14.     The actions of Defendant Officer Henry Bouganim were supported, authorized, approved, and/or otherwise generally ratified by his superior officers, Waveland Chief of Police James A. Varnell and Waveland Police Sergeant Clay Necaise.

15.     The actions of Defendant Officer Joshua Poyadou were supported, authorized, approved, and/or otherwise generally ratified by his superior officers, Waveland Chief of Police James A. Varnell and Waveland Police Sergeant Clay Necaise.

16.     The actions of Defendant Officer Henry Bouganim were supported, authorized, approved, and/or otherwise generally ratified (or wholly unchecked) by the other officers who

were present on the scene, including Waveland Police Sergeant Clay Necaise, Waveland Police Officer Christopher Allen, and Waveland Police Officer Joshua Poyadou.

17.     The actions of Defendant Officer Joshua Poyadou were supported, authorized, approved, and/or otherwise generally ratified (or wholly unchecked) by the other officers who were present on the scene, including Waveland Police Sergeant Clay Necaise, Waveland Police Officer Christopher Allen, and Waveland Police Officer Henry Bouganim.

18.     The City of Waveland, Mississippi, is a municipal corporation and the public employer of the said defendant officers.

19.     The Waveland Police Department is an entity within the City of Waveland, Mississippi, and it does employ, hire, and retain the services of the said defendant officers.

20.     At all times herein relevant, the said defendant officers were acting within the course and scope of their employment with the City of Waveland, for the purposes of liability under the Mississippi Tort Claims Act.  See, e.g., Miss. Code Ann. 11-46-3(1), 11-46-5(1).

## F A C T S

21.     The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through Twenty (20), in their entirety, as if fully copied *in extenso* herein.

22.     On or about February 6, 2010, at and prior to approximately 10:40 PM, Plaintiff was alone and ensconced in her personal abode, lying in her bed while watching television and playing a game (Tetris) on her wireless telephone.

23.     Plaintiff's home was located within the City of Waveland, County of Hancock, State of Mississippi, at the municipal address of 548 U.S. Highway 90, Waveland, Mississippi.

24.     On this date, Plaintiff was more than sixteen (16) weeks into the gestational period of a pregnancy.

25.    Earlier in the evening, Plaintiff had engaged in a verbal confrontation with her boyfriend while inside the referenced home.

26.    The earlier confrontation was completely verbal in nature, with no resulting or emanating physical contact between Plaintiff and her boyfriend.

27.    The nature of the referenced confrontation was witnessed by guests who were present in the Plaintiff's home at the time.

28.    The earlier verbal confrontation came to an end well prior to 10:40 PM on February 6, 2010.

29.    At the end of the verbal confrontation, Plaintiff departed the home's main living area into a back bedroom, while her boyfriend departed the premises.

30.    Prior to the end of the confrontation, Plaintiff's neighbor, Tabatha Ann Dunkerson, occupant of the apartment home directly beneath Plaintiff's home, had heard the confrontation and called 911 in reference to a possible domestic disturbance.

31.    When Ms. Dunkerson called 911, she related to the operator that the commotion being reported came from the apartment directly above her own: "I called 911 and told the operator that there was a pregnant girl living above me and it sounded like she was the victim of a domestic fight going on."

32.    Following Ms. Dunkerson's 911 call, Defendant Officer Henry Bouganim, Sergeant Clay Necaise, Officer Christopher Allen, and Officer Joshua Poyadou all responded to the scene.

33.    After arriving at the scene, Defendant Officers proceeded to Plaintiff's apartment and were met along the way by Ms. Dunkerson who related to them: "Right above me is where the commotion is, and she's pregnant." Said Defendant Officers confirmed that they had heard

and understood her concerns and proceeded to Plaintiff's apartment home.

34.     Thereafter, Defendants Officer Henry Bouganim, Sergeant Clay Necaise, Officer Christopher Allen, and Officer Joshua Poyadou all congregated outside the Plaintiff's dwelling, whereupon one (1) of the officers rang the home's doorbell.

35.     From within the home, Plaintiff heard the doorbell ring; however, she attributed its ringing to her boyfriend's return, and she chose to ignore same and remain in her bed.

36.     After some minutes had passed, and with no response at all from within Plaintiff's home, Defendants Officer Henry Bouganim, Sergeant Clay Necaise, Officer Christopher Allen, and Officer Joshua Poyadou chose to break down Plaintiff's door and enter the home.

37.     Upon entering Plaintiff's private home, Defendants spread out through the dwelling with guns and TASER devices drawn.

38.     At a certain point thereafter, Defendant Officers Henry Bouganim, Sergeant Clay Necaise, Officer Christopher Allen, and Officer Joshua Poyadou poured through the doorway leading into Plaintiff's master bedroom, all with firearms and tasers drawn and pointed at Plaintiff with at least one (1) of the Defendants yelling: "Get on the floor!  Get down on the fucking floor!"

39.     As Plaintiff sat motionless in her bed, initially terrorized thinking that her home was being robbed and subsequently in dumbstruck fear for her own well-being in the face of at least four (4) armed officers who invaded her bedroom, Defendant Officer Henry Poyadou, with his TASER drawn, approached the Plaintiff's side of the bed.

40.     Immediately upon seeing the TASER device, Plaintiff held up both hands and stated: "Don't do that.  I'm four (4) months pregnant."

41.     As the four (4) Defendant officers surrounded her bed, the Plaintiff inquired

regarding the reason for their brute invasion into the most private area of her home.

42.   In response to Plaintiff's pleas for information, Defendant Sergeant Clay Necaise yelled at the Plaintiff again to: "Get the fuck out of this bed!"

43.   When Plaintiff again asked the basis for this demand, Defendant Necaise hit the Plaintiff's up-stretched hand, slamming away the wireless telephone Plaintiff was holding.

44.   Officer Necaise's blow to Plaintiff's hand / phone was so severe that Plaintiff's phone flew across the room and struck the wall.

45.   Simultaneous to striking Plaintiff's hand / phone, Officer Necaise pulled back the covers on Plaintiff's bed—despite not knowing whether Plaintiff was naked or clothed and despite the fact that both of Plaintiff's hands were already above the covers and clearly visible.

46.   At this point Officer Necaise again yelled loudly for Plaintiff to "Get the fuck up!" and he grabbed her right wrist while another Defendant Officer grabbed her left wrist.

47.   As the officers both grabbed at Plaintiff's wrists, she pulled back her hands and loudly stated that her mobility was somewhat impeded due to her pregnancy, and she advised all the Defendants that she would voluntarily exit the raised bed on her own.

48.   At this point, Officer Necaise and another Defendant Officer again grabbed Plaintiff's wrists, this time pulling her body completely out of the bed, and causing her body to crash into a bedroom wall.

49.   The force of the impact was borne primarily by Plaintiff's face and nose, with the Plaintiff suffering a lacerated, broken and bloody nose, and the bedroom wall retaining a permanent indentation where it was struck by Plaintiff's head and face.

50.   At the moment Plaintiff's pregnant body was thrown against the bedroom wall, Defendant Officer Joshua Poyadou fired his TASER device, striking Plaintiff in the lower back

with fifty thousand (50,000) volts of electricity.

51.     As a result of the severe, blunt trauma Plaintiff sustained and the prolonged shock she received from Officer Poyadou's TASER, she collapsed onto the floor.

52.     Each and every Defendant Officer possessed actual knowledge that Plaintiff was pregnant at the time of the attack.

53.     At no point prior to deploying the TASER device did Defendant Officer Joshua Poyadou or any other Defendant Officer warn or otherwise notify Plaintiff of the impending electrical shock.  Later, one of the Defendant Officers confided to Plaintiff that he himself came close to being accidentally hit when the TASER was deployed as no warning was given before its deployment.

54.     The TASER was applied to Plaintiff's backside at a time which coincided exactly with the moment the Defendant Officers slammed the Plaintiff's face and body into a wall.

55.     As Plaintiff lay helplessly on the floor following the TASER shock, Defendant Officer Necaise towered over her and sneered: "Okay, now I guess you'll want to cooperate."

56.     Due to the trauma visited upon her pregnant body, Plaintiff lost control of her bladder and urinated upon herself.

57.     The Defendant Officers then placed handcuffs onto Plaintiff before standing her up and dragging her into the home's living room.

58.     Before being dragged out of the bedroom, Plaintiff requested permission to change her urine-soaked shorts, but she was denied.

59.     As the Plaintiff regained her faculties, she sat handcuffed in her living room and verbally questioned the Defendant Officers regarding why they broke into her home and brutally attacked her.

60.     After the Plaintiff was brutally assaulted, shocked with a TASER, handcuffed, humiliated, and dragged out of her bedroom, and while the other Defendant Officers ransacked her home, Defendant Necaise, standing in front of Plaintiff who now had a broken nose and lacerated chin, with blood, mucous and tears running down her face, bent over and leered into Plaintiff's face, pointed his index finger into Plaintiff's face, and screamed: "I'm tired of your fucking mouth. Shut the fuck up now!" and later "Now you're as ugly on the outside as you are on the inside!"

61.     Later in the discourse, Defendant Necaise advised Plaintiff she was "ugly," "white trash" whom he despised, and he further stated Plaintiff had the right to remain silent, and "I'd suggest you use that right and shut the fuck up."

62.     Plaintiff was not acquainted with Defendant Necaise at any time  prior to this brutal attack, and the statements made by Defendant Necaise, as set forth above, reflect his assessment of the Plaintiff as an anonymous citizen— a member of the public he had a duty to protect, not as an individual with whom he had prior involvement in any capacity.

63.     While the Defendant Officers searched through the home for other occupants, they simultaneously and without legitimate reason turned off the home's heater and opened both of the home's external doors (one of which had already been broken down upon their forced entry but which could have been made to close up to about 95%  as originally designed).

64.     Thus, although Plaintiff had communicated that she was cold she was needlessly forced to sit handcuffed in her own living room, exposed to the frigid February night air, wearing only urine soaked shorts and a t-shirt, with no socks, underwear, or other garments to protect her.

65.     After the Defendant Officers "secured" the Plaintiff, they performed a search of the home for other occupants.

66.     After this initial search, the Defendant Officers inquired of the Plaintiff regarding whether or not anyone else was present in the Plaintiff's small apartment home.

67.     The Plaintiff assured the Defendant Officers that she was alone in the apartment.

68.     Sequentially, it was only *after* the Defendant Officers had initially searched through the home for other occupants that they first queried the Plaintiff—a post-search fact acknowledged by the Officers when they asked, "Then where did he go?  Did he jump over the balcony?" At no time while in her home, either pre-attack or post-attack, did Defendant Officers ever ask Plaintiff if she was in danger or advise her they were sent there to protect her from a domestic abuse situation.

69.     Once the Defendant Officers satisfied themselves that no one else was present in the home, they then embarked on a "second" search of the home's interior, this time combing through the whole home, opening every cabinet, drawer, and canister.

70.     At a certain point, the Defendant Officers returned to the Plaintiff's bedroom and rummaged through the personal belongings of the Plaintiff's then-boyfriend.

71.     Ultimately, the Defendant Officers found a pipe within the boyfriend's belongings which they contended could have been used to smoke marijuana.  Plaintiff volunteered to submit to a urine test immediately in order prove her non-use of any controlled substances but Defendant Officers refused.

72.     Again, the relevant timeline reveals the Defendant Officers first searched the premises for other occupants, and *then*, only *after* fully "securing" both the Plaintiff and her home did the Defendant Officers initiate a second search of the premises, this time poring through every nook, cranny, and crevice of the dwelling—until they (finally) found a small piece of alleged contraband.

73. Based upon the Defendant Officers' "discovery" of a pipe allegedly intended to be used for smoking marijuana, they arrested the Plaintiff and charged her with possession of "drug paraphernalia."

74. Plaintiff was also charged with disorderly conduct/failure to comply, resisting arrest, and assault on a police officer—all in a case where four (4) armed, male police officers broke down the Plaintiff's door, rushed into her bedroom, literally slung her out of bed and into a wall, and deployed a TASER device to the Plaintiff's backside.

75. Ultimately, Plaintiff was transported to Hancock Medical Center for treatment of the injuries inflicted by the Defendant Officers' attack, and Plaintiff was specifically sent for examination of her then-unborn child relative to the Officers' TASER deployment.

76. While sitting in the lobby waiting area at Hancock Medical Center, Plaintiff engaged in conversation with one (1) of the attacking officers wherein the said officer related Plaintiff should not worry about potential harm to her unborn child because: "We taze pregnant women all the time, and it doesn't hurt anything."

77. The foregoing statement is certainly ratified where Waveland Police Chief James Varnell has previously acknowledged that between November 1, 2007, and November 1, 2008, Waveland officers used TASER devices eighty-seven (87) times to subdue people deemed uncooperative or violent. Welsh, J.R. (2008, November 9). "Concerns Rise on Getting Tased: Waveland Officers' Taser Use Far Exceeds Other Agencies." *The Sun Herald*.

78. Further, within eight (8) months of being hired by the Waveland Police Department, Defendant Sergeant Clay Necaise managed to deploy his TASER on so many occasions he could not recall the exact number when questioned under sworn examination—only that it was "less than 100," and a fellow member of the Waveland Police Department, Officer

Patrick Barber, testified under oath that he "he had subdued people with a Taser 'multiple times' as many as 50 occasions in 23 months." Id.

79.     In addition to indiscriminate TASER use, the Waveland Police Department also has an apparent penchant for other means of excessive force as demonstrated in at least two (2) recently-settled lawsuits filed against it where civil rights abuses were alleged against the department and which are factually close and quite analogous to the claims made by Plaintiff herein.

80.     In Miller v. City of Waveland, Mississippi et al, 1:09-cv-00211-RHW (S.Dist.Miss. 3/18/09), the Plaintiff alleged she was jerked, twisted, slammed into the hood, brutally handcuffed, and had her legs slammed into a car door—all during a routine traffic stop effected by Waveland Police Officer Travis Foreman.  The Miller case was settled and compromised as reflected in an Agreed Judgment of Dismissal [Rec. Doc. 65] filed and signed on September 13, 2010.

81.     In Bryant v. City of Waveland et al, 1:10-cv-00120 (S.Dist.Miss. 3/22/10), the plaintiff alleged various officers of the Waveland Police Department came to his home (outside of Waveland) in conjunction with the execution of an arrest warrant.  There, the plaintiff alleges the officers brutally attacked him, attacked his fifteen (15) year old daughter, shot his dog, and, upon realizing they were at the wrong address, manufactured a number of charges against the plaintiff which were later summarily dismissed.  The Bryant case was settled and compromised as reflected in an Agreed Judgment of Dismissal [Rec. Doc. 21] filed and signed on October 14, 2010.

82.     In the present matter, Defendant Sergeant Clay Necaise, a superior officer to the other named Defendant Officers, was present on the scene and actually participated in the abuse

of Plaintiff and abridgment of the rights guaranteed her by the Fourth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Mississippi.

83.     Despite actual knowledge of his subordinate officers' misconduct, Defendant Sergeant Clay Necaise did not undertake any action whatsoever to stop, slow, hinder, or otherwise do anything to prevent these extreme and outrageous abuses from occurring.  In fact, the evidence makes clear that Sergeant Necaise not only did not attempt to diffuse the situation and rein in the unconscionable behavior of his subordinate officers, he exacerbated the situation by encouraging and escalating the violence brought to bear against Plaintiff, psychologically, mentally and physically.

84.     At no time did Plaintiff physically resist or assault the Defendant Officers in any way, and the force used against her was unnecessary, unreasonable and excessive.

85.     At no time during the events described above was the Plaintiff intoxicated, incapacitated, a threat to the safety of herself or others, or disorderly.

86.     Plaintiff committed no criminal offenses.

87.     The Defendant Officers had no warrant for Plaintiff's arrest, no probable cause for Plaintiff's arrest, and no legal cause or excuse to seize the Plaintiff's person.

88.     The Defendant Officers had no warrant for the entry of Plaintiff's personal home, and their detailed search of the premises after Plaintiff had been beaten, shocked, and handcuffed was far in excess of a permitted security sweep and/or a permissible search attendant to arrest. It was, rather, a post-arrest violation of Plaintiff's constitutional rights and a warrantless search of the premises for possible criminal conduct.

89.     At all times during the events described above, the Defendant Officers were engaged in a joint venture and a conspiracy to deprive Plaintiff of her constitutional rights, and

the individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

90.     After the foregoing, while still acting under color of law and in furtherance of their conspiracy to deprive Plaintiff of her constitutional rights, Defendant Officers wrote, caused to be written or were aware that fellow Defendant Officers wrote certain police reports and narratives with the intention of misrepresenting what had happened and the order in which it happened for the purposes of evading liability and avoiding blame and repercussion for their unconscionable actions.

91.     As part of Defendant Officers' collective strategy to avoid having to face any negative consequences for their reprehensible actions they conspired to and did manufacture and fabricate "facts" and charges to level against Plaintiff so to shift all blame and liability to her and to remove it from themselves and in doing so did perjure themselves and suppress justice.

92.     The collective decision on the part of Defendant Officers to write  intentionally deceptive reports and swear out and sign false and unfounded criminal affidavits amounts to defamation, slander, libel, perjury, official misconduct, tampering with government records, malicious prosecution and conspiracy to do the same against Plaintiff.

93.     Said Defendant Officers' conspiracy was supported and executed by all officers present in Plaintiff's home during said incident, generally ratified by their superior officers and Waveland Chief of Police James A. Varnell and illustrates even further their individual and collective dereliction of duty and violation(s) of Plaintiff's rights.

94.     Following Plaintiff's release from incarceration, an incarceration based upon manufactured and perjured statements, affidavits and evidence, and almost two (2) months from

date of incident, she returned unto the Waveland Police Department in an attempt to file a citizen's complaint relative to her mistreatment in the incident alleged above.

95.     Plaintiff conferred personally with the Desk Clerk at the Waveland Police Department; unfortunately, this individual had no knowledge of how Plaintiff should go about filing such a Complaint.

96.     Ultimately, the Waveland Police Department Desk Clerk advised Plaintiff the person with whom she would need to speak was "in a meeting."

97.     The Desk Clerk then took the Plaintiff's name and number before assuring Plaintiff the appropriate individual would be in contact with her very shortly.

98.     After some three (3) weeks passed with no contact from the Waveland Police Department, Plaintiff sent an email detailing her Complaint to Defendant Chief James A. Varnell on May 12, 2010.  After realizing she had misspelled the email address of Defendant Varnell, Plaintiff forwarded her original email to his correct address on May 16, 2010.

99.     At present, seven (7) months have elapsed since Plaintiff sent this email communiqué, and Plaintiff has received no response whatsoever.

100.    Further, Plaintiff presently continues to await a return phone call from the person who was "in a meeting" when she initially attempted to file her grievance.

## D A M A G E S

101.    The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One-Hundred (100), in their entirety, as if fully copied *in extenso* herein.

102.    As a direct and proximate result of the said acts of the Defendant Officers, the Plaintiff, Dawn Melissa Daigre, suffered the following injuries and damages:

        a.      Violation of her constitutional rights under the Fourth and Fourteenth
                Amendments to the United States Constitution to be free from an

unreasonable search and seizure of her person and dwelling;

b.     Violation of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from cruel and unusual punishment;

c.     Loss of her physical liberty;

d.     Past, present and future medical, hospital, doctor, and related expenses;

e.     Past, present and future physical pain and suffering;

f.     Past, present and future mental anguish and anxiety;

g.     Past, present and future lost wages and diminished earning capacity;

h.     Past, present, and future emotional distress;

i.     Past, present, and future loss of enjoyment of life;

j.     Residual physical disability;

k.     Damage to her reputation due to the libelous slander and defamation fabricated and published by Defendants, and,

l.     Such other damages which were caused by the aforesaid incident and which were sustained by the plaintiff.

103.   Further, and as a direct and proximate result of the said acts of the Defendant Officers, the Plaintiff's then-unborn fetus, aged some sixteen (16) weeks, suffered the following injuries and damages:

a.     Past, present and future medical, hospital, doctor, and related expenses;

b.     Past, present and future physical pain and suffering;

c.     Residual disability(ies) such as latent or presently unknown physical, mental or neurological damages suffered while *in utero*; and,

d.     Such other damages which were caused by the aforesaid incident and which were sustained by Plaintiff's then unborn child.

## C O U N T   I
### (42 U.S.C. § 1983 Against Individual Defendants)

104.     The Plaintiff adopts and restates those allegations contained in Paragraphs One

(1) through One Hundred Three (103), in their entirety, as if fully copied *in extenso* herein.

105.     Plaintiff Dawn Melissa Daigre claims damages for the injuries set forth above

under 42 U.S.C. § 1983 against Defendants Chief James A. Varnell, Officer Henry Bouganim,

Sergeant Clay Necaise, Officer Christopher Allen, and Officer Joshua Poyadou for violation of

her constitutional rights under color of law, since the conduct and actions of the Defendant

Officers named herein were done under color of state law and in their individual and official

capacities and squarely within the scope of their employment.

106.     Said acts by said Defendant Officers were beyond the scope of their jurisdiction,

without authority of law, and were an abuse of their powers, and said Defendant Officers acted

willfully, knowingly, and with the specific intent to deprive the Plaintiff of her constitutional

rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to the

United States Constitution.

## C O U N T   I I
### (Assault and Battery Against Individual Defendants)

107.     The Plaintiff adopts and restates those allegations contained in Paragraphs One

(1) through One Hundred Six (106), in their entirety, as if fully copied *in extenso* herein.

108.     Defendant Officers Henry Bouganim, Sergeant Clay Necaise, Officer Christopher

Allen, and Officer Joshua Poyadou of the Waveland Police Department committed an assault and

battery upon Plaintiff Dawn Melissa Daigre.

109.     Defendant Officers Henry Bouganim, Sergeant Clay Necaise, Officer Christopher

Allen, and Officer Joshua Poyadou of the Waveland Police Department further committed an

assault and battery upon the Plaintiff's then-unborn fetus, aged sixteen (16) weeks.

110.    As a result of this assault and battery, Plaintiff's fetus suffered damages to include all manner of physical injuries, the entirety of which will be manifested and revealed over the child's lifetime, and the full extent of which is not presently known: "Recovery for prenatal injuries when a child is born alive is permitted in every jurisdiction in the country." Farley v. Sartin, 195 W.Va. 671, 466 S.E.2d 522, 528 (1995), as cited in 66 Federal Credit Union v. Tucker, 853 So.2d 104, 107 (Miss. 2003).

## C O U N T   I I I
### (False Arrest and Illegal Imprisonment Against Individual Defendants)

111.    The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Ten (110), in their entirety, as if fully copied in extenso herein.

112.    Defendant Officers Henry Bouganim, Sergeant Clay Necaise, Officer Christopher Allen, and Officer Joshua Poyadou illegally arrested and illegally imprisoned Plaintiff Dawn Melissa Daigre.

113.    As a result of this false arrest and illegal imprisonment, Plaintiff Dawn Melissa Daigre suffered the damages as aforesaid.

## C O U N T   I V
### (42 U.S.C. § 1983 Against City of Waveland / Waveland Police Department)

114.    The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Thirteen (113), in their entirety, as if fully copied in extenso herein.

115.    Prior to February 6, 2010, the City of Waveland and/or the Waveland Police Department developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Waveland, which policies or customs caused the violation of the Plaintiff's rights.

116.    It was the policy and/or custom of the City of Waveland and/or the Waveland Police Department to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City of Waveland.

117.    It was the policy and/or custom of the City of Waveland and/or the Waveland Police Department to tolerate known misconduct by Defendants Officer Henry Bouganim, Sergeant Clay Necaise, Officer Christopher Allen, and Officer Joshua Poyadou.

118.    Both prior and subsequent to February 6, 2010, the City of Waveland and/or the Waveland Police Department had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action, which fact is evidenced by the Plaintiff's own failure, with due diligence, to even obtain a response from the Waveland Police Department relative to her written grievances.

119.    It was the policy and/or custom of the City of Waveland and/or the Waveland Police Department to inadequately supervise and train its police officers, including the Defendant Officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

120.    It was the policy and/or custom of the City of Waveland and/or the Waveland Police Department to not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

121.    As a result of the above described policies and customs, police officers of the City of Waveland and/or the Waveland Police Department, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

122.    The City of Waveland and/or the Waveland Police Department, by and through its

Chief of Police, instituted and supported unconstitutional acts, customs, and policies whereby Waveland Police Officers were permitted and encouraged to engage in the widespread abuse of TASER devices, including deployment of the device upon pregnant females.

123.     The City of Waveland and/or the Waveland Police Department, by and through its Chief of Police, further instituted and supported unconstitutional acts, customs, and policies whereby the Chief of Police specifically defended his officers' prolific use of TASER devices upon the citizenry, where Waveland Police Chief James Varnell issued a written statement defending his officers' widespread TASER deployment at rates which far exceeded those of neighboring communities.  Welsh, J.R. (2008, November 9). "Concerns Rise on Getting Tased: Waveland Officers' Taser Use Far Exceeds Other Agencies." The Sun Herald.

124.     In a specific circumstance, the Chief of Police, Defendant Varnell, suggested his officers acted properly in deploying a TASER device upon a local prominent and elderly businessman, Mr. C.W. Parker, when on the day following Hurricane Gustav, Defendant Clay Necaise stopped Mr. Parker for a turning lane violation and, after Mr. Parker was in handcuffs and surrounded by three (3) officers, Defendant Necaise deployed a TASER into Mr. Parker's backside—in identical fashion to the deployment upon the Plaintiff.  Id.

125.     Further, the City of Waveland and/or the Waveland Police Department, by and through its Chief of Police, has maintained a general environment of citizen abuse as identified and pled in Miller v. City of Waveland, Mississippi, et al, 1:09-cv-00211-RHW (S.Dist.Miss. 3/18/09) and Bryant v. City of Waveland, et al, 1:10-cv-00120 (S.Dist.Miss. 3/22/10), both as referenced above.

126.     The acts, customs, and policies of the City of Waveland and/or the Waveland Police Department amounted to deliberate indifference to the Plaintiff's constitutional rights and

proximately caused her injuries as alleged herein.

127.   Under the doctrine of *respondeat superior*, the defendant City of Waveland and/or the Waveland Police Department is fully responsible for the tortious acts of the individual employees named herein.

128.   Further, the above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of Waveland, including Defendant Chief James A. Varnell and/or the Waveland Police Department, to the constitutional rights of persons within the City, and were the cause of the violations of Plaintiff's rights alleged herein.

## C O U N T   V
### (State Common Law Action Against City of Waveland / Waveland Police Department)

129.   The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Twenty-Eight (128), in their entirety, as if fully copied *in extenso* herein.

130.   Defendant City of Waveland and/or the Waveland Police Department and the Defendant Officers herein failed to exercise due care and failed to properly analyze the facts clearly known to them and, by doing so, violated Plaintiff's rights at common law and under the Mississippi Constitution, where Plaintiff was wrongfully arrested, falsely imprisoned, and the Defendant Officers engaged in a conspiratorial  abuse of legal process which was made, done, and effected without justification and for no proper purpose.

## C O U N T   V I
### (Mississippi Tort Claims Act Against City of Waveland / Individual Officers)

131.   The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Thirty (130), in their entirety, as if fully copied *in extenso* herein.

132.   Defendants are liable unto the Plaintiff under the under Mississippi Torts Claims

Act, Miss. Code § 11-46-1 to 11-46-23.

133.    Defendants did intentionally and with wrongful purpose cause Plaintiff to be arrested on February 6, 2010, without a lawful purpose.

134.    Proper notice of the claim was hand-delivered to the City as reflected by letter dated November 12, 2010 and to which the City indicated receipt through its insurance adjustor.

135.    This wrongful arrest, false imprisonment, assault and battery, defamation, malicious prosecution, tampering with government records, perjury and malicious abuse of legal process, constituted negligence and reckless disregard to the safety and well-being of Plaintiff and of her Federal and State constitutional rights by Defendants.

136.    The Defendant Officers' actions, as outlined with specificity above, constituted willful and intentional acts, negligence, and those actions were undertaken and done with a complete and reckless disregard for the health, safety and well-being of Plaintiff and of her Federal and State constitutional rights.

137.    Defendants are thus liable to Plaintiff in damages for the maximum amount allowed under the Mississippi Tort Claims Act.

## C O U N T   V I I
### (Intentional Infliction of Emotional Distress Against All Defendants)

138.    The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Thirty-Seven (137), in their entirety, as if fully copied *in extenso* herein.

139.    As a direct and proximate consequence of the outrageous  and unconscionable acts and omissions on the part of the Defendants as described above, the Defendant Officers intentionally inflicted emotional distress upon the Plaintiff.

140.    Thus, the Plaintiff is entitled to a monetary judgment against the Defendants, both

jointly and severally.

## C O U N T   V I I I
### (Attorney Fees Against All Defendants)

141.    The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Forty (140), in their entirety, as if fully copied *in extenso* herein.

142.    The Plaintiff contends that she is also entitled to the awarding of reasonable attorney fees as a part of the costs of prosecuting the present cause of action pursuant to 42 U.S.C. 1988.

## C O U N T   I X
### (Libelous and Slanderous Defamation of Character Against All Defendants)

143.    The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Forty Two (142), in their entirety, as if fully copied *in extenso* herein.

144.    As a direct and proximate consequence of the Defendants' conspiracy and actions in furtherance of same to manufacture, fabricate and publish unfounded, perjured and untrue criminal charges and "evidence" against Plaintiff so as to attempt to evade their own liability for the unconscionable acts alleged herein, Plaintiff has suffered injury to her reputation and character.

145.    Thus, the Plaintiff is entitled to a monetary judgment against the Defendants, both jointly and severally.

## P A R T I C U L A R I Z E D   A L L E G A T I O N S

146.    The Plaintiff adopts and restates those allegations contained in Paragraphs One (1) through One Hundred Forty Five (145), in their entirety, as if fully copied *in extenso* herein.

- 23 -

147.     Plaintiff avers and states she was deprived of rights secured by the Constitution or laws of the United States by and through the actions, conduct, policies, and practices of the named defendants, and the said deprivation of rights was committed by Defendants under the color of state law. See, *e.g.*, <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 931, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

148.     Plaintiff avers and states the Defendants deprived her of constitutional and/or statutory rights which were clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted. See, *e.g.*, <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

149.     Plaintiff avers and states the Defendant Officers violated Plaintiff's right to be free from excessive force during the course of her arrest, where the Defendants' use of force was excessive as measured under the Fourth Amendment's reasonableness standard, and the amount of force used by the Defendant Officers was objectively unreasonable under the particular circumstances. See, *e.g.*, <u>Graham v. Connor</u>, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

150.     Plaintiff avers and states well-accepted jurisprudence has found the use of a TASER device upon a defenseless female suspected of a minor crime is an unreasonable use of force, where the female is surrounded by four (4) officers, is frightened, and who fails initially to heed an officer's directive:

> [The officer] knew that [the victim] was on the telephone with a 9-1-1 operator and was frightened, yet after the second time she failed to heed his command to get off of the telephone, without warning, he tasered her.... [The officer's] actions were unreasonable.

<u>Brown v. City of Golden Valley</u>, 534 F.Supp.2d 984, 993 (D.Minn.,2008), citing <u>Parker v. City of S. Portland</u>, No. 06-129-P-S, (D.Me. May 18, 2007), --- F.Supp.2d ---, 2007 WL 1468658, at

*21-*23 (unpublished).

151.    Plaintiff avers and states the Defendant Officers are not entitled to qualified immunity where the severity of the atrocities visited upon the Plaintiff, a petite female who was in the second trimester of her pregnancy, were of sufficient magnitude that the Defendants knew or should have known their conduct was patently unconstitutional.  Accord, Guite v. Wright, 147 F.3d 747, 750 (8th Cir.1998).

152.    Plaintiff avers and states the Defendant Officers did not and truly could not reasonably misapprehend "the law governing the circumstances [they] confronted," where Plaintiff's right to be free from excessive force (and particularly to be free from the application of a TASER to her personage as a frightened, petite, pregnant female) was clearly established as a matter of law.  Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

153.    Plaintiff avers the City of Waveland and/or Waveland Police Department had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action, which failure caused or significantly contributed to the violence and abuse visited upon Plaintiff and for which the Defendants are liable in accordance with Harris v. City of Pagedale, 821 F.2d 499, 504 (8th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987).

154.    Plaintiff finally avers and states, for all of the reasons set forth above, the Defendant Officers' assault, arrest, and detainment of Dawn Melissa Daigre was illegal, wrongful and false, where Plaintiff Daigre had committed no crime, and there was no need for any amount of force—excessive or otherwise—to be administered against her.

**WHEREFORE**, in consideration of the above and foregoing facts and circumstances as alleged, the Plaintiff now respectfully prays and requests that this Honorable Court:

- 25 -

a.    Award compensatory damages to the Plaintiff and against the Defendants, jointly and severally;

b.    Award compensatory damages to the Plaintiff's unborn fetus and against the Defendants, jointly and severally;

c.    Award punitive damages to the Plaintiff as well as on behalf of Plaintiff's newborn baby and against the Defendants, jointly and severally;

d.    Award damages for loss of consortium to the Plaintiff and against the Defendants, jointly and severally;

e.    Issue a court order, pursuant to 42 U.S.C. §1988, that the Plaintiff is entitled to the costs involved in maintaining this action and reasonable attorney's fees;

f.    Award such other and further relief as this Court may deem appropriate; and,

g.    Issue a court order directing and convening and empaneling a jury to consider the merits of the claims herein.

Dated: December 15, 2010
Bay St. Louis, Mississippi

                                    **Alexander & Alexander, P.C.**
                                    Attorneys and Counselors at Law

                                    By:_____
                                    Brian Bienvenu Alexander, Esq.
                                    Mississippi Bar Roll No.: 99365
                                    220 Bookter Street
                                    Bay St Louis, Mississippi 39520
                                    228-467-4675 (telephone)
                                    225-467-4656 (facsimile)
                                    Counsel for Plaintiff